MURIENTE, PLAINTIFF AND APPELLANT, *v.* TERRASA ET AL., DEFENDANTS AND RESPONDENTS.

APPEAL from the District Court of Arecibo in an Action for Damages.

No. 1304.—Decided July 9, 1915.

JUDICIAL SECURITY—ATTACHMENT.—A bond for an attachment to secure the effectiveness of a judgment is a judicial security of a distinct nature by its origin from a voluntary or conventional security.

ID.—BENEFIT OF DISCUSSION—JOINT AND SEVERAL SURETIES.—In a judicial security by express statutory provision the surety cannot claim the benefit of discussion of the property of the principal debtor, a fact which places him in the position of a surety jointly and severally bound with the debtor.

ID.—ATTACHMENT—JOINT AND SEVERAL OBLIGATION.—The sureties are bound jointly and severally with the other debtor in a bond given for an attachment to secure the effectiveness of the judgment which may be rendered in a specific action; and this being so, an action may be maintained against the debtor and the sureties simultaneously or against any one of them.

MEASURE OF DAMAGES—LOSSES—PROFITS UNREALIZED.—Section 1073 of the Civil Code provides that indemnity for losses and damages includes not only the amount of the loss which may have been suffered, but also that of the profits which may not have been realized, therefore the amount earned previously during a like period of time and under identical circumstances may be taken as a basis for computing the profits which the plaintiff failed to realize.

APPEAL—MUNICIPAL COURTS—TRIAL DE NOVO.—In appeals from municipal to district courts the cases are tried *de novo* and therefore the judgment appealed from is not reversed, affirmed, or modified, but another judgment is rendered based on the pleadings and evidence produced in the appellate court.

ID.—JOINT AND SEVERAL SURETIES—TRIAL DE NOVO—JUDGMENT.—In the present case the action was brought in the municipal court against two solidary sureties and judgment was rendered against them for part of the amount sued for. Only one of the sureties appealed to the district court. A trial *de novo* having been had, at which only the creditor and the surety appeared, judgment was rendered against the former, who appealed to the Supreme Court and served notice of appeal upon the surety who was a party to the trial in the district court. *Held:* That such action implies that the creditor elected to look to only the solidary surety who had appealed to the district court and that therefore the judgment of this court, in place of that which should have been rendered by the district court, should be only against the surety who appealed to the said court, who may sue his co-debtors according to law for contribution.

The facts are stated in the opinion.

*Messrs. R. Agrait. Aldea* and *José Martínez Dávila* for the appellant.

*Mr. Simón Largé* for the respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court of Arecibo dismissing a certain complaint in an action for damages. It was alleged in the complaint, in brief, that on March 11, 1914, Santos Gil sued the plaintiff for $410 and in order to secure the effectiveness of the judgment which might be rendered, she applied for and obtained the attachment of four mules belonging to the plaintiff after filing a

surety bond executed by the defendants. The attachment was levied on March 25, 1914, and judgment was rendered against Santos Gil on April 25, 1914. She appealed but later withdrew the appeal, leaving the judgment in effect. On July 13, 1914, the attached mules were returned to their owner, the plaintiff. The plaintiff alleges that by reason of the attachment he suffered the following damages: $350 as net earnings which would have accrued to him from the use of the mules from March 25 to July 13, 1914; $37.20 which the plaintiff had to pay to the marshal of the municipal court for the custody of the mules during the said period, and $60 which the plaintiff paid to the attorney who represented him in the said suit and attachment.

The defendants demurred to the complaint on the ground of misjoinder of causes of action and that it did not state facts sufficient to constitute a cause of action. Later they answered, denying generally all the allegations of the complaint and alleging that in any event the attachment levied by Santos Gil had not caused the plaintiff any damage whatever.

The case was tried first in the Municipal Court of Arecibo and on October 14, 1914, the said court rendered judgment for the plaintiff for only $97.20, or the aggregate amount which the plaintiff alleged he had paid to his attorney and the marshal. The municipal court held that the alleged damages resulting from the profits not received had not been proven.

From the judgment of the municipal court defendant Gabriel Terrasa appealed to the district court and the case having been tried *de novo* in that court, both the plaintiff and defendant Gabriel Terrasa appearing, judgment dismissing the complaint absolutely was rendered on January 11, 1915.

From that judgment the plaintiff took the present appeal, serving notice on the defendant Terrasa but not on the other defendant, Correa.

The evidence introduced by the plaintiff in the district court consisted of:

1. The testimony of Gumersindo Román, Secretary of the Municipal Court of Arecibo, who testified to the fact of the attachment and identified the record in which the same was granted. The said record was then introduced in evidence.

2. The testimony of the plaintiff, who said that four mules used by him in hauling provisions between Aguadilla and Lares had been attached; that he made three trips a week which netted him a clear profit of $25 weekly, and that he paid his attorney and the marshal the amounts stated in the complaint.

3. The testimony of Juan Ramón Lorenzo, who said that he knew the plaintiff and that he had been working with mule wagons all his life; that he knew him in March of 1914, at which time he was working with a wagon and two pairs of mules hauling provisions. The witness fully explained the hauling business and concluded by saying: "A man like this (the plaintiff), who is a farrier and feeds and takes care of his mules, will earn at least $20 or $25 weekly net profit from each wagon." The witness also testified that he noticed that the plaintiff was without work while the mules were under attachment.

4. The testimony of witness Bernardo González, who said that the plaintiff was known to work with a mule wagon and that he was engaged in that business during March of 1914. He further testified that the gross earnings of a mule wagon constantly employed in hauling freight is from $125 to $150 monthly and that the net earnings therefrom might be reduced to $75 monthly.

5. The bond which formed part of the record introduced in evidence when witness Román testified. The pertinent part of said bond reads as follows:

"Whereas plaintiff Santos Gil de Lamadrid has filed a complaint in this court against defendant Pedro J. Muriente for the recovery of $410 and has petitioned the court for an attachment to secure the effectiveness of the judgment to be rendered in the case;

"Whereas for granting the attachment the court has exacted a bond in the sum of $500 to respond for any damages which the said attachment may cause;

"Therefore, we, Miguel A. Correa and Gabriel Terrasa, residents of the judicial district of Arecibo, P. R., freely and spontaneously become surety, jointly and severally, for the obligation which the plaintiff has contracted in the said suit by virtue of this bond, binding ourselves in the sum of $500 to satisfy such damages as may be caused defendant Pedro J. Muriente in case final judgment be rendered dismissing the complaint against him. (Signed) Miguel Correa, Surety. Gabriel Terrasa, Surety."

The evidence of the defendant consisted only of the testimony of witness Juan Martín Lagarreta, who explained the business of hauling freight with mule wagons on the highway between Aguadilla and Lares. He testified that the gross earnings were $6 a trip; that the expenses could be calculated at $6.75 weekly and that the weekly wear and tear would amount to $1.50.

The judgment appealed from is based on two distinct grounds: First, that the plaintiff should have brought suit against the person who petitioned for the attachment and not against the defendants who were simply sureties, and, second, that even if the plaintiff had a cause of action against the defendants by reason of the surety, the evidence does not show that he suffered any damage as a consequence of the attachment; therefore he has no right to claim any amount from the defendants.

Let us examine the first ground. In discussing it the trial court expressed itself as follows:

"The complaint in this case is directed exclusively against Miguel Correa and Gabriel Terrasa, the sureties of Santos Gil de Lamadrid on the bond given for the attachment to secure the effectivenesss of the judgment which might be rendered in the action brought by said Santos Gil against the plaintiff. The complaint does not contain a literal copy of the bond and it is alleged that in the present case the defendants signed a bond by which they bound themselves *jointly* and *severally* in the sum of $500 to respond for any damages which the

defendant (now plaintiff) might suffer in case the court should finally dismiss the complaint against him.

"According to the provisions of sections 1104 and 1723 of the Revised Civil Code, which are identical to the provisions of articles 1137 and 1822 of the Spanish Code, the liability of sureties is subsidiary, or attaches only in case an execution against the principal is returned *nulla bona,* unless the sureties assumed the obligation jointly with the principal, in which case they may be sued jointly with him.

"In the present case the sureties did not bind themselves jointly with the principal, the plaintiff in the former action, inasmuch as she neither signed nor took part in the bond, and it is evident from the allegation of the complaint transcribed that the joint and several obligation is established in the bond between the sureties who signed the same; therefore it is clear that the complaint is defective and does not state a sufficient cause of action against the defendant sureties, for it is not pleaded therein that the principal is insolvent nor is she sued jointly with her sureties.

"In demonstration of this defect in the complaint we will quote from the opinion of our Supreme Court in the case of *Lowande* v. *Otero & Co. et al.,* in which a similar action was brought against the firm of Otero & Co. as principals and against the sureties to recover the amount of the bond as damages alleged to have been caused by Otero & Co. by the levy of an attachment.

"The Supreme Court said, '* * * if in consequence thereof (the attachment) the defendant (plaintiff in the subsequent action) should suffer any damage, such damage shall be made good by the sureties, and, of course, *by the principal debtors also, their liability being joint and several.*' "

In our opinion the conclusion reached by the trial judge is erroneous. The law applicable to this case is the special act to secure the effectiveness of judgments which may be rendered in cases brought in the courts of Porto Rico (Revised Statutes of 1902, sections 369 *et seq.*) and the provisions of the Civil Code relating to legal and judicial security (sections 1755, 1756 and 1757).

Section 4 of the Act to secure the effectiveness of judgments (R. S., section 372) reads as follows:

"If it be clearly shown by means of any authentic document that

the fulfillment of the obligation may be legally enforced, the court shall decree the remedy without bond.

"In any other case it shall be required that a bond be furnished. The bond thus given shall secure the defendant against any damage caused to him by reason of the remedy."

And the pertinent part of the bond reads:

"Therefore, we, _____, freely and spontaneously become surety, jointly and severally, for the obligation which the plaintiff has contracted in the said suit by virtue of this bond, binding ourselves in the sum of $500 to satisfy such damages as may be caused defendant Pedro J. Muriente in case final judgment be rendered dismissing the complaint against him."

Therefore, this is a judicial security of a distinct nature by its origin from the voluntary or conventional security which the district court undoubtedly had in mind when it rendered its judgment. See Manresa, Civil Code, volume 12, page 368.

In a judicial security, by express statutory provision the surety cannot claim the benefit of discussion of the property of the principal debtor, a fact which places him in the position of a surety jointly bound with the debtor. See section 1157 of the Revised Civil Code and Falcón on the Civil Code, volume 4, page 405.

Commenting on article 1856 of the Spanish Civil Code, which is the same as section 1757 of the Revised Code, Manresa expresses himself as follows:

"The provision of this article has been the subject of much dispute among doctrinal writers, and it still gives rise to contrary opinions as regards its origin and equity.

"Referring to article 1923 of the Italian Code, which is identical in every respect to that under consideration, Ricci says that in law and even in equity a sufficiently good reason to justify the diversity of *treatment* observed in the said section will be sought in vain, adding that in enacting the same the legislature only maintained a usage already introduced in practice without considering whether such usage was well justified or not.

"Other authors also criticise the said provision of law on the ground that security is always an accessory obligation dependent upon a principal obligation contracted by a third party who is first liable for its fulfillment, and that for the same reason that a surety who becomes so by statute or by a decree of court has the same liabilities as one who becomes so by agreement, he should have the same rights and remedies as the latter; therefore, they say, *it cannot be conceived why one may claim the benefit of discussion and the other may not.*

"But those who hold such an opinion undoubtedly lose sight of the notorious difference between the origin of these two classes of surety—a difference which in itself alone is sufficient to render impossible the exercise or utility of the benefit of discussion regardless of the reason given by those who favor the limitation imposed by our code that the ties should be stronger and the guaranties greater in obligations contracted in cases of judicial security than in the other classes, in view of the special nature of the obligations secured thereby.

"That special nature of the rights and interests which the courts are bound to protect suggests, in fact, insurance by all the means not disposed to delay or impede the fulfillment of the obligation of security to the end that the surety may meet the obligation at once without waiting to ascertain whether the principal has property first to respond therefor or to proceed against said property, for the reason stated elsewhere that the surety must offer many more guaranties and greater security than the principal whose solvency is insufficient, as is shown by the necessity imposed by law or by the courts to secure said interests and rights."

Examining carefully the case of *Lowande* v. *Otero & Co. et al.,* 14 P. R. R., 554, cited by the trial judge, it will be seen that it is contrary to the theory of the said judge and is in every respect in harmony with the rule that the sureties are bound jointly and severally with the debtor in the bond given to secure the effectiveness of the judgment which may be rendered in a specific action.

This being the case and assuming that sureties Correa and Terrasa were bound jointly and severally with debtor Santos Gil de Lamadrid to pay the plaintiff such damages as he might be caused by the attachment of his property by order

of the court to secure the effectiveness of the judgment which might be rendered in the action brought against him by Santos Gil de Lamadrid, he had the right to sue the debtor and the sureties simultaneously or any one of them. Sections 1111 and 1723 of the Revised Civil Code.

Let us examine the second ground. We have examined the evidence carefully and do not understand how the trial court could reach the conclusion that no damages were caused by reason of the attachment.

The plaintiff was the owner of a wagon and four mules. He was not only the owner but he worked them personally in the transportation of provisions, obtaining a net profit of $75 monthly, taking as a basis the testimony least favorable to the interests of the plaintiff. If by reason of the attachment the plaintiff's wagon and mules were taken from him and he was obliged to suspend his business operations, how is it possible even to suppose that no damage was caused him?

Section 1073 of the Civil Code provides that indemnity for losses and damages includes not only the amount of the loss which may have been suffered, *but also that of the profit which the creditor may have failed to realize.*

Is it not logical to presume that had it not been for the attachment the plaintiff would have continued his business and made the same profits as before? In our opinion it is, and therefore we think that the amount earned previously during a like period of time and under identical circumstances may and should be taken as a basis for calculating the profits which the plaintiff failed to realize. From March 25, when the attachment was levied, to July 13, when the wagon and mules were returned to the plaintiff, three months and twenty days elapsed. Calculating the profits at $75 monthly, a simple arithmetical operation shows that the plaintiff failed to realize $275, which he is entitled to recover as a just indemnity for the damages sustained by reason of the attachment. We are also of the opinion that the plaintiff has the right to

recover the sum of $37.20 which he was compelled to pay to the marshal of the municipal court for the custody of the mules during the time the attachment was in effect.   As to the attorney's fee, as it is not plainly stated what amount was paid by reason of the attachment only, its reimbursement cannot be ordered.

Having arrived at the foregoing conclusions, the judgment must be reversed.   But against whom directly should the judgment be rendered for the payment of the said sums?

As we have seen, this action was begun in a municipal court, which gave judgment against the defendants for the sum of only $97.20, instead of for the $547.20 sued for in the complaint.   One of the defendants did not appeal.   Neither did the plaintiff appeal.   The appeal was taken by defendant Terrasa only.   Only the plaintiff and defendant Terrasa were parties to the trial *de novo* in the district court.   The court dismissed the complaint absolutely.   Thereupon the plaintiff appealed to this court and served notice of appeal upon defendant Terrasa only.

Could a judgment be rendered by the district court placing the defendant-appellant in a worse position?   In our opinion it could be because in appeals from municipal courts to district courts the cases are tried *de novo* and therefore the judgment appealed from is not reversed, affirmed, or modified, but another judgment is rendered based on the pleadings and evidence produced in the appellate court.

Was it necessary to serve the other defendant with the notice of the appeal to this court?   In our opinion it would have been and the failure so to do would have been a ground for dismissal of the appeal but for the fact that this is a case of solidary debtors.

The action of the plaintiff in appearing in the new trial in the district court and litigating with only one of the solidary debtors and in serving notice of his appeal on that surety only, implies that he elected to look to him only for his claim. Consequently, in rendering the judgment which should have

been rendered by the district court this court should give judgment against defendant Terrasa only, who may sue his co-debtors according to law for contribution.

The judgment appealed from should be reversed and defendant Terrasa be adjudged to pay to the plaintiff the sum of $312.20, with interest thereon from the date on which the complaint was filed, without special imposition of costs.

> *Reversed and judgment rendered against defendant Terrasa.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.